**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| WILLIAM KELSCH | Case No. 5:21-cv-00229 |
| Plaintiff, | |
| v. | |
| GENERAL MOTORS LLC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## <u>PLAINTIFF'S CLASS ACTION COMPLAINT</u>

Plaintiff William Kelsch ("Plaintiff") brings this class action lawsuit against General Motors LLC ("GM" or "Defendant") on behalf of himself and all other similarly situated persons who purchased or leased 2017–2019 model year Chevrolet Bolt EVs (hereafter "Chevrolet Bolt," "Chevy Bolt," "Bolt" or "Class Vehicles"). Plaintiff alleges that the Class Vehicles are defective and were deceptively marketed to consumers. Plaintiff seeks economic damages and other appropriate relief as a result.

## INTRODUCTION

1.      GM introduced the Chevrolet Bolt in early 2016, a plug-in, all-electric vehicle.

2.      Electric vehicles offer the potential to be relatively environmentally-friendly and provide savings on gas. However, these perks come with a trade-off: electric vehicles with a full charge often travel a shorter distance than conventional gas-powered cars with a full tank of gasoline. As such, the driving range of an electric vehicle's battery, such as the Chevy Bolt, is one of the most critical factors a consumer considers when purchasing any battery-charged electric vehicle.

3.      GM knew that electric car-buyers placed an emphasis on an electric car's battery range and marketed the Bolt accordingly. GM touted the Bolt's battery as being "where it all starts" and advertised an energy capacity of 60 kWh, which GM said allowed drivers to travel an EPA-estimated 238 miles of range on a full charge.[1]

4.      Unfortunately for consumers like Plaintiff, the Class Vehicles suffer from a serious defect that, in order to avoid risk of fire, results in a severe loss of potential battery mileage of the high voltage batteries. Specifically, when the high voltage batteries of 2017–2019 model year Bolts are charged to full, or very close to full, they pose a risk of fire (the "Battery Defect").[2]

5.      The only "interim remedy" to reduce the risk of fire is a software update from GM that limits the maximum state of charge to approximately 90% battery capacity (or less), which thus reduces the mileage that these vehicles can otherwise travel on a full charge.

---

[1] https://media.chevrolet.com/media/us/en/chevrolet/vehicles/bolt-ev/2019.tab1.html (last visited Feb. 17, 2021).

[2] https://my.chevrolet.com/how-to-support/safety/boltevrecall (last visited Feb. 17. 2021).

6.      To achieve this "remedy," Bolt owners and lessees must schedule a service appointment with their local Chevrolet dealership to apply a software update to change the vehicle charge settings.  Until an owner is able to get to the dealership to have the patch installed, a driver can modify the battery settings on the vehicle in order to limit the battery charge to 90%.

7.      Despite being aware of serious battery problems with the Bolt, GM failed to inform prospective Bolt owners and lessees that the vehicle is plagued with this dangerous Battery Defect. As such, owners and lessees of the Class Vehicles are forced to decide between the risk of a potentially fatal car fire or accept GM's interim "remedy" which results in a significant loss in vehicle range.

8.      Before finally revealing the Battery Defect to Bolt owners and lessees in November 2020, GM had for years been encouraging consumers to charge their batteries to 100% as a regular practice, something that apparently would have led customers to face an increased fire risk.

9.      Plaintiff brings this class action lawsuit on behalf of himself and a class of similarly situated consumers who have purchased or leased one or more of the Class Vehicles (the "Class" or "Class Members").

10.      Plaintiff and the Class seek redress for GM's fraudulent concealment/fraud by omission, GM's breaches of express and implied warranties, and GM's unjust enrichment.

11.      Plaintiff and the Class seek actual damages, restitution, and equitable relief, as well as statutorily-permitted reasonable attorneys' fees and costs of suit and pre- and post-judgment interest for GM's misconduct related to the design, manufacture, marketing, sale, and lease of Chevrolet Bolts. Plaintiff and the Class also seek punitive damages as a result of GM

knowingly introducing defective Class Vehicles into the marketplace and defrauding consumers across the nation.

## PARTIES

### A.    Plaintiff

12.    Plaintiff Kelsch is an adult individual who resides in Cibolo, Guadalupe County, Texas. In or around September 15, 2019, Plaintiff purchased a new 2019 Chevrolet Bolt from an authorized dealership in San Antonio, Texas.

### B.    Defendant General Motors

13.    Defendant GM is a limited liability company organized under Delaware law with its principal office located at 300 Renaissance Center, Detroit, Michigan 48265. Defendant designs, tests, markets, manufactures, distributes, warrants, sells, and leases various vehicles under several prominent brand names, including but not limited to Chevrolet, Buick, GMC, and Cadillac in this district and throughout the United States.

## JURISDICTION

14.    This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) at least one Class Member is a citizen of a different state than Defendant. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

15.    This Court has personal jurisdiction over Defendant because it is present, licensed to conduct business, and does conduct business regularly in this District; and Defendant has sufficient contacts with this District.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business in this District, including sales and advertising, and Defendant is subject to personal jurisdiction in this District. Additionally, a substantial part of the events and/or omissions giving rise to the claims occurred within this District.

## FACTUAL ALLEGATIONS

### A.     GM's Marketing of the Bolt

17.     Since its release, approximately 94,958 Chevy Bolts have been sold in the United States, South Korea, Mexico, and Canada.[3]  In addition to price, a core consideration for electric vehicle purchasers and lessees are the capacity and range of the car battery. Because charging stations are not as easily located and ubiquitous as gas stations, an electric vehicle's usefulness depends in large part on the distance the vehicle can travel before needing a recharge. Electric car buyers rely on the manufacturer's representations about an electric vehicle's ability to travel on a single charge.

18.     According to Car and Driver, electric vehicle range is "the all-important stat."[4] Because electric vehicles "can't be driven nearly as far on a single charge as most gas-powered cars can go on a tank of fuel[] [a]nd [because electric vehicle] batteries can't be rejuiced in the five minutes it takes to top up a car's tank at a gas station," increased range is one of the primary consideration for purchasers or lessees or electric vehicles. (*Id.*)

19.     GM knew about these battery capacity and range considerations and marketed the Bolt accordingly. GM touted the battery as "where it all starts" and as making it possible to get

---

[3] *See* https://gmauthority.com/blog/gm/chevrolet/bolt-ev/chevrolet-bolt-ev-sales-numbers/ (last visited Feb 17, 2021).

[4] https://www.caranddriver.com/shopping-advice/a32668797/ev-faqs/ (last visited Feb. 17, 2021).

drivers to the places they need to go.[5] GM marketed the Class Vehicles as having an EPA-estimated travel range of 238 miles without recharging. GM has maintained these representations since it began marketing the Class Vehicles to the general public.

20.     GM published this estimated travel range in several places, such as a GM specifications sheet disclosing that the vehicle was able to maintain a driving range of an "EPA-estimated 238 miles" and a "product information" fact sheet regarding the 2017 Bolt that confirmed "an EPA-estimated 238 miles of range." (*Id.*)

21.     GM marketed the driving range as one of the Chevrolet Bolt's main selling points, stating in a 2016 press release that "[w]ith the vehicle's EPA-estimated range of 238 miles, owners can expect to go beyond their average daily driving needs — with plenty of range to spare — in the 2017 Bolt EV . . . ."[6]

22.     GM made these same or similar representations about the 2018 and 2019 model Chevrolet Bolt, again marketing the vehicle as having an alleged EPA-estimated range of 238 miles.[7]

**B.     The Chevrolet Bolt is Defective**

23.     The Chevy Bolt is equipped with a lithium-ion battery. Lithium-ion batteries are a key component of electric vehicles due to their high energy efficiency, high power, and long life

---

[5] *See* https://media.chevrolet.com/media/us/en/chevrolet/vehicles/bolt-ev/2017.tab1.html (last visited Feb. 17, 2021).

[6] *See* https://media.chevrolet.com/media/us/en/chevrolet/home.detail.html/content/Pages/news/us/en/2016/sep/0913-boltev.html (last visited Feb. 17, 2021)

[7] *See* https://media.chevrolet.com/media/us/en/chevrolet/vehicles/bolt-ev/2018.tab1.html; https://media.chevrolet.com/media/ca/en/chevrolet/vehicles/Bolt-EV/2018.html; https://media.chevrolet.com/media/ca/en/chevrolet/vehicles/Bolt-EV/2019.html (last visited Feb. 17, 2021).

cycle.[8]  The battery used in the Class Vehicles was produced by LG Chem, a subsidiary of LG, in its South Korea facility.

24.     Since the lithium-ion battery serve as the Bolt's only power source, consumers must rely on the capacity and safety of the lithium-ion batteries.

25.     The Battery Defect renders the battery susceptible to catching fire when fully charged to 100%.

26.     Plaintiff and members of the Class are unaware of this latent defect. Rather than inform consumers about the existence of this Battery Defect at the time of purchase, GM urges Bolt owners to do the opposite and "top off your battery as much or as little as you like."[9]

27.     All Class Vehicles are affected by GM's November 2020 recall. Interestingly, the recall only affects model years 2017-2019; the 2020 model year Chevrolet Bolt EVs do not have this same issue because they reportedly "use a different battery-cell design than the vehicles affected by this recall."[10] The fact that GM switched to a different battery-cell design beginning with the 2020 model year cars is further evidence that GM was aware that battery problems existed with the 2017–2019 model year Bolts.

28.     Instead of issuing a complete recall of the vehicles to replace the dangerous batteries, GM informed the NHTSA that the purpose of the recall is to instead install an interim

---

[8] *See* https://afdc.energy.gov/vehicles/electric_batteries.html#:~:text=Lithium%2DIon%20 Batteries,-Lithium%2Dion%20batteries&text=They%20also%20have%20a%20high,%2C% 20and%20low%20self%2Ddischarge.&text=Most%20of%20today's%20PHEVs%20and,that%2 0of%20consumer%20electronics%20batteries (last visited Feb. 17, 2021).

[9] https://web.archive.org/web/20171011012928/http://www.chevrolet.com/bolt-ev-electric-vehicle (last visited Feb. 17, 2021).

[10] *See* Brown, Laura, *50,000 Chevy Bolt EVs Recalled; Owners Told Not to Park in Garages, Near Houses* (Jan. 10, 2021), available: https://www.caranddriver.com/news/a34672772/ chevrolet-bolt-ev-recall-battery/ (last visited Feb. 17. 2021).

software remedy to reprogram the hybrid propulsion system control module to reduce the battery's charge capacity by 10%.

29.     GM told Class Vehicle owners to schedule a service appointment with their local dealerships to update the vehicle's battery software to automatically limit the maximum state of charge to approximately 90% battery capacity. For Class Vehicle owners who have not yet done so, GM recommends that those owners or lessees should not park their car in their garage or carport until after they have visited their local dealership and, in the interim, modify their car software to lower the maximum battery charge to 90%.

30.     Class Vehicle owners are thus either subject to a car fire, or must install a software patch that results in reduced driving range to 90% or less.

31.     Despite its knowledge of the Battery Defect for years, GM has sold and leased and continues to sell and lease Class Vehicles with the knowledge that they contain defective and potentially dangerous batteries.

## C.     GM Knew About the Defect

32.     The Chevrolet Bolt has long been plagued with battery-related problems. GM has been aware of battery-related problems for years.

33.     The battery has been the subject of a variety of GM improvement programs and notices over the years, including various software updates that were necessary to improve the performance and function.[11]

---

[11] *See, e.g.*, https://static.nhtsa.gov/odi/tsbs/2018/MC-10141375-9999.pdf (last visited Feb. 17, 2021); https://static.nhtsa.gov/odi/tsbs/2018/MC-10143682-9999.pdf (last visited Feb. 17, 2021); https://insideevs.com/news/337521/update-possible-chevy-bolt-battery-cell-failure-prompts-gm-statement-recall/ (last accessed Feb. 17, 2021); https://static.nhtsa.gov/odi/tsbs/2018/MC-10145176-9999.pdf (last visited Feb. 17, 2021).

34.     Even though a Bolt battery fire occurred in March 2019, GM only first launched an internal investigation beginning August 2020.[12] GM did not alert customers at the time that it was conducting that investigation.

35.     According to the National Highway Traffic Safety Administration reports, the batteries powering the Chevy Bolt have caught fire under the rear passenger seat on at least three occasions.[13]

36.     Notwithstanding its knowledge about the fire and the latent defect affected the batteries, GM failed to notify Plaintiff and members of the Class of the Battery Defect at the time of purchasing their Class Vehicles.

37.     In fact, GM did not perform its recall until several fires occurred in the Class Vehicles. This was perhaps an effort to delay the financial ramifications of having to publicly acknowledge that its Class Vehicles and car batteries were inherently defective by design and incapable of safely providing customers with GM's advertised 238-mile driving range.

38.     GM actively concealed and withheld the fact that the existence of the Battery Defect would diminish car owners' usage of the Class Vehicles and would also depreciate their vehicle's intrinsic and resale value, because the Class Vehicles could not safely achieve the represented mileage capacity that GM had advertised.

---

[12] *See* McEachern, Sam, *2019 Chevrolet Bolt EV Fire To Be Investigated By General Motors*, GM Authority (Aug. 27, 2020), available: https://gmauthority.com/blog/2020/08/2019-chevrolet-bolt-ev-fire-to-be-investigated-by-general-motors/ (last visited Feb. 17, 2021).

[13] *See* Mufson, Steven, *Auto industry peers into an electric future and sees bumps ahead*, Washington Post (Feb. 6, 2021), available: https://www.washingtonpost.com/climate-environment/2021/02/06/auto-industry-peers-into-an-electric-future-sees-bumps-ahead/ (last visited Feb. 17, 2021).

39.     GM issued a recall on November 13, 2020.[14] That recall, number N202311730, revealed that "GM has decided that a defect which relates to motor vehicle safety exists in select 2017-2019 model year Chevrolet Bolt EV vehicles … that may pose a risk of fire …. GM has developed software that will limit vehicle charging to 90% of full capacity…."

40.     GM also mailed an "Important Safety Recall" and emailed a notice entitled "Important safety information regarding your Chevrolet Bolt EV" to Bolt owners and lessees in November 2020, which stated essentially the same thing.

41.     A "Bolt EV Safety Recall" sheet was also mailed to Class Members in December 2020 in English and Spanish.

42.     In these communications, instead of offering owners a full recall to completely replace the defective battery, GM only instituted a software update, which served merely as a temporary fix for a permanent and potentially dangerous defect.

43.     GM's "remedy" in the form of a software update reduces the range of Class Vehicles to 10%. This adds to the "range anxiety" that Chevrolet Bolt owners already have – the deep-seated fear of many electric vehicle drivers that their vehicle will not have sufficient mileage or power to get them from point A to point B safely.[15]

44.     This reduced capacity also means more charging time, maintenance, and expense for Bolt owners and lessees.

---

[14]*See* https://my.gm.com/recalls?vin=1G1FX6S07J4120452&evar36=eml_monthly_onstar_ OVD&vels=662483105 (last visited Feb. 17, 2021).

[15] *See* Brooks, Allen, *EV "Range Anxiety": Real World Issues*, MasterResource (July 10, 2017), available:  https://www.masterresource.org/electric-vehicles/ev-batteries/ (last visited Feb. 17, 2021).

45.     Bolt owners and lessees have been deprived of the benefit of their bargain when they purchased or leased their Bolts.

46.     Had GM disclosed the Battery Defect instead of remaining quiet, customers would have been made aware of it, and would not have purchased their Bolt vehicles or would have paid substantially less for them.

47.     While GM has said since November 2020 in public forums and to Bolt owners and lessees that it was looking to introduce a more permanent fix after January 1, 2021, there has yet to be a more permanent solution offered by GM to remedy the Battery Defect. Despite recent reports suggested that "the only remedy for this [defect] is to replace all of the affected battery packs or keep the batteries from charging fully,"[16] GM has provided no indication that it is willing to replace the defective batteries for all Class Vehicles.

48.     GM's knowledge of the Battery Defect and its subsequent inaction has resulted in harm to Plaintiff and Class members.

**D.      GM Sold and Continues to Sell Defective Class Vehicles**

49.     GM marketed, distributed, and sold Chevrolet Bolt vehicles in multiple states across the nation, including in the State of Texas.

50.     GM knew or should have known that the Class Vehicles were being advertised and sold with false and misleading representations regarding the range of the Class Vehicles and the risk of fire posed by the defective batteries.

---

[16] Graham, Sean, *Cause of LG's battery fires rumored to be found*, (Feb. 12, 2021), available: https://electrek.co/2021/02/12/cause-of-lg-battery-fires-rumored-to-be-found/?fbclid=IwAR0cF8_XFT254BACDGo7s2KLreTxRkMbq2-CUpNSodzhII4G51JPqWD3jzU (last visited Feb. 17, 2021).

51.     Despite this knowledge, GM has failed to compensate owners and lessees who purchased Class Vehicles. Instead, GM has implemented a temporary software update which comes at a significant cost to functionality, reducing the battery capacity and resulting mileage capabilities by 10%.

52.     Due to these defects, the Chevrolet Bolt is defective and is not fit for its intended purpose.

53.     As a result of GM's unfair, deceptive and/or fraudulent business practices, Class Members have been deprived of the benefit of their bargain, have lost use of their Class Vehicles for extended periods of time, have been exposed to dangerous conditions, and have incurred lost time and out-of-pocket costs. Class Vehicles also have suffered a diminution in value due to the Battery Defect.

**E.     Plaintiff's Experience**

54.     Plaintiff's experience with his Class Vehicles is consistent with countless other Chevrolet Bolt owners' and lessees' complaints about and experiences with their vehicles.

55.     Plaintiff Kelsch is an adult individual who resides in Cibolo, Texas. In or around September 15, 2019, Plaintiff purchased a new 2019 Chevrolet Bolt (VIN: 1G1FZ6SOXK4111997) from an authorized dealership in San Antonio, TX.

56.     Plaintiff Kelsch made the decision to purchase the Chevrolet Bolt after considering GM's representations about the vehicle, including the reported 238-mile range. He chose the Chevy Bolt based primarily on its represented range, particularly GM's supposed reputation for manufacturing quality electric cars.

57.     After Plaintiff Kelsch was notified about the recall in or around November 2020, he set the charging limit in his Bolt to 80%, per GM's recommendations, instead of having the software update installed.

58.     After setting the charging limit, the estimated range on Plaintiff Kelsch's car declined and was drastically less than the range of 238 miles that Plaintiff Kelsch expected he would be getting when he purchased his vehicle.

59.     Because GM was unable to provide a more definitive timeframe for a permanent solution to remedy the Battery Defect, Plaintiff traded in his Chevrolet Bolt on or around March 3, 2021.

60.     The recall dramatically reduced the MSRP value of $43,000. Plaintiff Kelsch was unable to get more than a $19,000 trade in value.

61.     When Plaintiff Kelsch purchased his Chevrolet Bolt, he was not aware of the Battery Defect, or that the only purported "fix" to prevent a battery fire would greatly reduce his vehicle's range, battery capacity and resale value.

62.     Had GM disclosed the defect in its battery causing a lower range for a single charge or the battery's propensity to catch fire, Plaintiff Kelsch would not have purchased the Chevrolet Bolt or would have paid substantially less for it.

F.     **Plaintiff's Experience is Mirrored by Other Potential Class Members**

63.     Plaintiff's experience is representative of the experiences with scores of other consumers.

64.     Numerous Chevy Bolt owner and lessees have griped about the Battery Defect publicly, in online consumer complaint forums, NHTSA's website, and, upon information and

belief, to GM directly.   A small sample of the countless consumer complaints are included below:



**Is anyone else annoyed with GM over the Bolt Recall and they way they are handling it?**

Too start i understand there is more than 50,000 bolts that are currently under recall (thats the number i have seen floated), and probably very limited staff to handle any sort of request. But all that aside...

I have a 2017, First owner, almost 19000 miles. I am still in the 3 year 36000 bumper to bumper warranty. I called just to see what my options were and not even to request a buy back. I would be ok with a real fix. (90% is unacceptable) and they kept telling me to take it to a dealership and drop it off and pay out of pocket for a rental car and they would reimburse me for my cost. I should not have to come out of Pocket!!!! This is now almost 2 weeks in and i call again yesterday to told my case still has not been picked up by someone. This is not right. My biggest issue is we as bolt owners that are affected are first gen adopters and most still covered under warranty and then this weekend they announce a new EV and a second gen Bolt. All while they wont come up with a reasonable solution for most current gen owners that for the most part a loyal GM customers. I own a Volt and and Bolt and my current volt is my second Volt. Why at this point would we not try for a buy back just to get rid of GM and go elsewhere. This is a big cost to them but this is also GM's problem to fix and how they handle it I would image is how there image with EV's moving forward looks.

Maybe I'm just super frustrated and very impatient and also rambling just a bit but they really need to step up for us current owners and make this right. Get a real fix, swap out battery packs, or just buy their old cars back.

💬 39 Comments    ➤ Share    🔖 Save    ⊘ Hide    🚩 Report                    75% Upvoted [17]



**Lee**
@lebuck_phx

Replying to @ChevyElectric

GM recalled 68,667 Chevy Bolts on 11/13/2020. GM has done nothing to fix this problem. GM's pathetic solution is to limit vehicle charging to 90% of capacity to prevent fires. You'd be a fool to do business with a company that thinks it's okay to treat their customers like this.

11:20 AM · Feb 8, 2021 · Twitter for iPhone                    [18]

---

[17] https://www.reddit.com/r/BoltEV/comments/llekwh/is_anyone_else_annoyed_with_gm_over_the_bolt/ .



**February 12, 2021** NHTSA ID NUMBER: 11395843

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11395843

**Incident Date** November 20, 2020

**Consumer Location** SAN JOSE, CA

**Vehicle Identification Number** 1G1FX6S08H4****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | NOW INSTEAD OF 240 MILES I ONLY HAVE 170 MAXIMUM AFTER YOUR 10% REDUCTION |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

[19]

**February 6, 2021** NHTSA ID NUMBER: 11394929

**Components: FUEL/PROPULSION SYSTEM**

**NHTSA ID Number:** 11394929

**Incident Date** November 30, 2020

**Consumer Location** SARANAC LAKE, NY

**Vehicle Identification Number** 1G1FW6S04H4****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | UNDER THE RECALL, THE MAXIMUM BATTERY CHARGE IS TO BE REDUCED BY 90%. MY VEHICLE GETS LESS THAN THAT, AND NOW ONLY GETS @120-130 MILES MAX, BUT REALISTICALLY ONLY @ 100-105. I LIVE IN COLD WEATHER, MOUNTAINOUS NORTHERN NY STATE. THE CAR IS USED TO COMMUTE TO WORK, 80 MILES PER DAY SO I HAVE TO CHARGE IT EACH DAY, AND BECAUSE IT DOES NOT HAVE FAST-CHARGE, IT TAKES @ 6 HOURS TO GET FULLY CHARGED TO THE REDUCED MAXIMUM. THERE IS ALSO A LOSS OF PROPULSION POWER AS I GET A DASHBOARD WARNING ALL THE TIME, AND I CANNOT PARK THE VEHICLE IN MY GARAGE WHERE MY HOME CHARGER IS LOCATED. CHEVY SHOULD REPLACE THE BATTERY WITH ONE THAT HAS FAST-CHARGE AS COMPENSATION FOR THE LOSS OF USE, INCONVENIENCE, ETC. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

[20]

---

[18] https://twitter.com/lebuck_phx/status/1358813061134446595.

[19] https://www.nhtsa.gov/vehicle/2017/CHEVROLET/BOLT.

[20] https://www.nhtsa.gov/vehicle/2017/CHEVROLET/BOLT.

January 26, 2021 NHTSA ID NUMBER: 11389892
## Components: FUEL/PROPULSION SYSTEM

**NHTSA ID Number:** 11389892

**Incident Date** January 25, 2021

**Consumer Location** SAN RAFAEL, CA

**Vehicle Identification Number** 1G1FX6S03H4****

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

THE BOLT EV WAS RECALLED ON NOVEMBER 13, 2020 DUE TO THE FACT THAT THE BATTERY WAS DEFECTIVE AND HAD STARTED NUMEROUS FIRES, EVEN WHEN NOT PLUGGED IN.

GM OFFERED A "TEMPORARY FIX" WHICH REDUCED THE PERFORMANCE OF THE VEHICLE (REDUCED THE RANGE OF THE VEHICLE PER CHARGE) AND LIMITED SOME OTHER FUNCTIONS). THEY HAVE NOT OFFERED A PERMANENT FIX AND IT HAS BEEN OVER 60 DAYS SINCE THE RECALL WAS ISSUED.

SINCE GM HAS NOT ISSUED ANY OFFICIAL PERMANENT FIXES TO THIS PROBLEM, AND BECAUSE OF MY CONCERN ABOUT THIS ISSUE, I HAVE TAKEN IT UPON MYSELF TO CONTACT GM DIRECTLY.

DESPITE NUMEROUS CALLS AND E-MAILS TO GM, I HAVE RECEIVED NO CONCRETE OFFERS TO REMEDY THE SITUATION.

I HAVE BEEN ASSIGNED A "CASE MANAGER" - A GM EMPLOYEE- WHO IS SUPPOSED TO HELP PROVIDE A PERMANENT FIX FOR THIS ISSUE, I HAVE BEEN UNABLE TO GET ANY SPECIFICS AS OF TODAYS'S DATE ABOUT THE PROCESS AND/ OR OPTIONS. AGAIN, THIS DESPITE VERY SPECIFIC QUESTIONS. I AM REPEATEDLY TOLD THAT BY GM THAT THEY MUST GO THROUGH THEIR "PROCESS" AND THAT MY CASE MANAGER HAS NO MORE INFORMATION.

PROMISES OF LETTERS OF "OFFERS" FOR REMEDY HAVE NOT APPEARED, DESPITE MY SENDING ALL REQUESTED DOCUMENTATION TO GM, WHICH WAS SUPPOSED TO EXPEDITE THE PROCESS. TIMELINES AS TO WHEN REMEDIES WILL BE OFFERED KEEP CHANGING . I HAVE BEEN TOLD THAT INFORMATION WILL BE EMAILED REPEATEDLY AND IT HAS NOT BEEN RECEIVED, ETC.

THE INITIAL RECALL ALL STATED ADVISED THAT THE CAR SHOULD NOT BE PARKED NEAR OWNER'S HOUSES FOR FEAR THAT THE CAR WOULD CATCH ON FIRE. NOT ONLY IS THIS IMPRACTICAL FOR ME, I DON'T FEEL COMFORTABLE DRIVING A CAR THAT HAS HAD THIS HISTORY.

GM NEEDS TO TAKE RESPONSIBILITY FOR THEIR FAULTY BATTERIES AND FOLLOW THROUGH ON THE NEED FOR A PERMANENT FIX. THEY ARE ALREADY PAST THEIR DEADLINE IN DOING SO.

GM HAS NOT FOLLOWED THROUGH ON RECALL OF THE BOLT

[21] https://



22

## CLASS ALLEGATIONS

65.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and

23(b)(2) as representatives of the following Class:

**Nationwide Class**

**All purchasers and lessees of model year 2017-2019 Chevrolet Bolt vehicles who purchased for end use and not for resale.**

66.    Excluded from the Class are: Defendant, its affiliates, subsidiaries, parents,

successors, predecessors, any entity in which Defendant or its parents have a controlling interest;

Defendant's current and former employees, officers and directors; the Judge(s) and/or

Magistrate(s) assigned to this case; any person who properly obtains exclusion from the Class;

any person whose claims have been finally adjudicated on the merits or otherwise released; and

---

[22] https://www.nhtsa.gov/vehicle/2019/CHEVROLET/BOLT%252520EV.

the parties' counsel in this litigation. Plaintiff reserves the right to modify, change, or expand the Class definitions based upon discovery and further investigation.

67.     **Numerosity**: The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual Class Members are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that tens of thousands of Class Members have been subjected to the conduct by Defendant alleged herein. (Upon information and belief, members of the Class can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, *etc.*) that GM maintains regarding its sales and leases of Class Vehicles.)

68.     **Existence/Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

a.     Whether GM engaged in the conduct alleged herein;

b.     Whether GM knew about (or should have known about) the Battery Defect but failed to disclose it and its consequences;

c.     When GM became aware of the Battery Defect;

d.     Whether GM knowingly concealed the Battery Defect;

e.     Whether Plaintiff and Class Members overpaid for their Class Vehicles in light of the Battery Defect;

f.     Whether a reasonable consumer would consider the Battery Defect or its consequences to be material;

g. Whether GM's conduct alleged herein violates consumer protection statutes, false advertising laws, warranty laws, and other laws as asserted herein;

h. Whether Plaintiff and Class Members are entitled to damages, including punitive damages, as a result of GM's conduct alleged herein, and if so, the amount or proper measure of those damages; and

i. Whether Plaintiff and Class Members are entitled to equitable relief.

69. **Typicality**: Plaintiff's claims are typical of the claims of the Class since Plaintiff and all Class Members were injured in the same manner by Defendant's uniform course of conduct described herein. Plaintiff and all Class Members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiff and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct in selling and failing to remedy defective Class Vehicles. Plaintiff advances the same claims and legal theories on behalf of himself and all absent Class Members. There are no defenses available to GM that are unique to Plaintiff.

70. **Adequacy:** Plaintiff is an adequate representative for the Class because his interests do not conflict with the interests of the Class. Plaintiff has retained counsel competent and highly experienced in complex class action litigation and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

71. **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and all Class Members. The injury suffered by

each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to effectively individually redress the wrongs done to them by GM. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

### COUNT I
### Violation of the Magnuson-Moss Warranty Act
### 15 U.S.C. § 2301, *et seq*. ("MMWA")

72.     Plaintiff repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs.

73.     Plaintiff brings this claim individually and on behalf of the Nationwide Class.

74.     The Class Vehicles are a "consumer product" under the MMWA, 15 U.S.C. § 2301(1).

75.     Plaintiff and Class Members are "consumers" under the MMWA, 15 U.S.C. § 2301(3).

76.     Defendant is a "supplier" and "warrantor" under the MMWA, 15 U.S.C. §§ 2301(4)-(5).

77.     Under 15 U.S.C. § 2301(d)(1), consumers have a cause of action when they are damaged when a warrantor does not comply with a written warranty.

78.     Defendant's 3-year/36,000 mile "bumper to bumper" new vehicle limited warranty is a "written warranty" under the MMWA.[23] 15 U.S.C. § 2301(6).

79.     Defendant's 5-year/60,000 mile powertrain new vehicle limited warranty is a "written warranty" under the MMWA.[24] 15 U.S.C. § 2301(6).

80.     Defendant's 5-year/60,000 mile optional extended new vehicle limited warranty is a "written warranty" under the MMWA.[25] 15 U.S.C. § 2301(6).

81.     Defendant's 8-year/100,000 mile electric vehicle component warranty is a "written warranty" under the MMWA.[26] 15 U.S.C. § 2301(6).

82.     Defendant's representations that Class Vehicles sold to Plaintiff and other Class Members have "an EPA-estimated 238 miles" on "a full charge" and "offer[] more than 383 km of range" and that Plaintiff and Class Members could "top off your battery as much or as little as you like" are written warranties  within the meaning of the MMWA, 15 U.S.C. § 2301(6).[27]

---

[23] https://www.chevrolet.com/important-information (last visited Feb. 17, 2021); https://my.chevrolet.com/content/dam/gmownercenter/gmna/dynamic/manuals/2017/Chevrolet/BOLT%20EV/Owner's%20Manual.pdf (last visited Feb. 17, 2021); https://www.chevrolet.com/content/dam/chevrolet/na/us/english/index/owners/warranty/02-pdfs/2018-chevrolet-limited-warranty-and-owner-assistance-information.pdf (last visited Feb. 17, 2021); https://www.chevrolet.com/content/dam/chevrolet/na/us/english/index/owners/warranty/02-pdfs/19_CHEV_WM_.pdf (last visited Feb. 17, 2021).

[24] *See id.*

[25] *See id.*

[26] *See id.*

[27] https://web.archive.org/web/20171011012928/http:/www.chevrolet.com/bolt-ev-electric-vehicle#charging (last visited Feb. 17, 2021); https://web.archive.org/web/20190421140946/https://www.chevrolet.com/previous-year/bolt-ev-electric-car (last visited Feb. 17, 2021); https://web.archive.org/web/20180929091633/https://www.chevrolet.com/electric/bolt-ev-electric-car?cmp=OLA_DISPLAY_20519044_211515933_411199255_77369262 (last visited Feb. 17, 2021); https://media.chevrolet.com/media/ca/en/chevrolet/vehicles/Bolt-EV/2017.html (last visited Feb. 17, 2021); https://media.chevrolet.com/media/ca/en/chevrolet/vehicles/Bolt-EV/2018.html (last visited Feb. 17, 2021);

83.     Through these written warranties, Defendant warranted to Plaintiff and Class Members that the Class Vehicles they purchased were free from defects, of merchantable quality, and fit for ordinary and represented use.

84.     Plaintiff and Class Members relied on the existence and length of these written warranties when deciding whether to purchase or lease the Class Vehicles.

85.     Defendant breached its written warranties as described herein. Contrary to Defendant's representation, Plaintiff and other Class Members were subject to the Battery Defect and were faced with the choice of limiting their battery charge to 90% (or less) or subjecting themselves to the risk of a potential car fire.

86.     Defendant further breached its written warranties by:

a.      Selling and leasing Class Vehicles with a battery that was defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

b.      Refusing and/or failing to honor the warranties by repairing or replacing the battery and thereby leaving the Class Vehicles with a capability less than that was advertised.

87.     Defendant knew, or should have known, of the Battery Defect in the Class Vehicles.

88.     Defendant knew, or should have known, of its misrepresentations and omissions regarding the capabilities of the Class Vehicles, yet proceeded with a coordinated advertising campaign through which Defendant promised that the Class Vehicles have "an EPA-estimated 238 miles" on "a full charge" and "offer[s] more than 383 km of range" and that Plaintiff and Class Members can "top off your battery as much or as little as you like."

---

https://media.chevrolet.com/media/ca/en/chevrolet/vehicles/Bolt-EV/2019.html (last visited Feb. 17, 2021).

89.     Defendant has been given reasonable opportunity to cure its breaches of warranty. Defendant had actual knowledge and ample notice that the battery in the Class Vehicles is and was defective, but failed to provide an adequate remedy.

90.     As a result of the Battery Defect, the Class Vehicles fail to perform in accordance with their ordinary and intended purposes and are unfit and unreasonably dangerous for ordinary use.

91.     As a direct and proximate result of Defendant's breach of written warranties, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

92.     The amount in controversy for purposes of Plaintiff's individual claims exceeds $25. The amount in controversy in this action exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be adjudicated. 15 U.S.C. § 2310(d)(3).

93.     Plaintiff also seeks costs and expenses, including reasonable attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

## COUNT II
### Breach of Express Warranty

94.     Plaintiff repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs.

95.     Plaintiff brings this claim individually, and on behalf of the Class.

96.     Plaintiff and other Class Members formed a contract with Defendant at the time they purchased or leased their Class Vehicles. The terms of the contract include the promised and affirmation of fact and express warranties made by Defendant.

97.     In addition to the express conditions and warranties, Defendant provides the following warranties for its Class Vehicles:

a.      A Bumper-to-Bumper Limited Warranty of 3 years/36,000 miles where "Chevrolet is committed to ensuring satisfaction with your new vehicle. Your Chevrolet dealer also wants you to be completely satisfies and invites you to return for all your service needs, both during and after the warranty period";

b.      A Powertrain Limited Warranty of 5 year/60,000 miles;

c.      An Electric and Hybrid Warranty that "warrant[s] certain components for each Chevrolet…Bolt EV…for 8 years or 100,000 miles…against warrantable repairs to the specific electric propulsion components of the vehicle" which includes repair and replacement to the "Electric Propulsion Battery." [28]

98.     Plaintiff and Class Members' Class vehicles did not perform as promised due to the Battery Defect.

99.     Defendant has actual knowledge that it breached the express warranties with Plaintiff and Class Members related to the Class Vehicles.

100.    Defendant breached the terms of the express warranties with Plaintiff and Class Members by providing the Class Vehicles with defective batteries.

101.    Plaintiff sought assistance for their Class Vehicle from Defendant pursuant to the recall during the express warranty period. However, no permanent fix is currently available. Class Vehicles have not been repaired and restored to the condition warranted.

---

[28] https://www.chevrolet.com/important-information (last visited Feb. 17, 2021); https://my.chevrolet.com/content/dam/gmownercenter/gmna/dynamic/manuals/2017/Chevrolet/BOLT%20EV/Owner's%20Manual.pdf (last visited Feb. 17, 2021); https://www.chevrolet.com/content/dam/chevrolet/na/us/english/index/owners/warranty/02-pdfs/2018-chevrolet-limited-warranty-and-owner-assistance-information.pdf (last visited Feb. 17, 2021); https://www.chevrolet.com/content/dam/chevrolet/na/us/english/index/owners/warranty/02-pdfs/19_CHEV_WM_.pdf (last visited Feb. 17, 2021).

102.    As the foreseeable and actual result of Defendant's breach of express warranties, Plaintiff and Class Members were damaged in an amount that is the difference between the value of the Class Vehicles if they had possessed batteries as warranted and performed as represented and the value of the Class Vehicles that they actually received.

**COUNT III**
**Common Law Fraud**

103.    Plaintiff repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs.

104.    Defendant made material omissions concerning a presently existing or past fact by not fully and truthfully disclose to its customers the true nature of the inherent Battery Defect. A reasonable consumer would have expected that the Chevy Bolt would not be defective and pose a serious safety risk.

105.    The facts concealed or not disclosed by Defendant to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price.

106.    Had Plaintiff and the Class known about the defective nature of the Class Vehicles and their Battery Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them. As a result, Plaintiff and the other Class members were fraudulently induced to purchase or lease the Class Vehicles with the said defects and all of the resultant problems.

107.    Plaintiff and Class Members reasonably relied on these omissions and suffered damages as a result. To the extent that Defendant's conduct was willful, oppressive or malicious, Plaintiff and Class Members are entitled to an award of punitive damages.

**COUNT IV**
**Fraudulent Concealment / Fraud by Omission**

108.    Plaintiff repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs.

109.    Plaintiff brings this claim on behalf of himself and members of the Class.

110.    Defendant intentionally concealed the Battery Defect, acted with reckless disregard for the truth, and denied Plaintiff and the Class highly relevant information to their purchasing decisions.

111.    Defendant further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and would perform and operate properly, including when the battery was fully charged. Defendant knew that these representations were false when made.

112.    The Class Vehicles purchased or leased by Plaintiff and the Class were, in fact, defective, unsafe, and unreliable, because the vehicles' batteries were susceptible to bursting into flame when fully charged or nearly fully charged.

113.    Defendant had a duty to disclose that these vehicles were defective, unsafe, and unreliable because Plaintiff relied on Defendant's material representations that the Class Vehicle's battery could be safely fully charged to permit the vehicles to travel for a reported range of 238 miles on a single full charge.

114.    This concealment was material because if it had been disclosed, Plaintiff would not have bought or leased the Class Vehicles or would have bought or leased the vehicle at a substantially reduced price.

115.    The above representations were material because they were facts that would typically be relied on by a person purchasing or leasing a motor vehicle. Defendant knew or recklessly disregarded that its representations were false, but intentionally made the false statements to sell or lease the Class Vehicles.

116.    Plaintiff relied on Defendant's reputation along with Defendant's failure to disclose and Defendant's affirmative assurance that its vehicles would safely and reliably travel the disclosed driving range when purchasing the Class Vehicles.

117.    Plaintiff and the Class have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of the Class Vehicles.

118.    Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the Class. Plaintiff and the Class are therefore entitled to an award of punitive damages.

## COUNT V
## Unjust Enrichment

119.    Plaintiff repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs.

120.    Plaintiff and Class Members overpaid for their defective Class Vehicles in amounts that they would not have paid to purchase or lease the vehicles had they known of the Battery Defect.

121.    Defendant has been unjustly enriched by these overpayments which were obtained by the conduct described herein. Equity militates against Defendant retaining these ill-gotten gains.

122.     Defendant should be required to relinquish the monies it obtained and disgorge its profits from sales of the Class Vehicles as restitution in order to place Plaintiff and Class Members in the position in which they would have been had Defendant not knowingly sold Class Vehicles with a concealed Battery Defect that potentially causes a vehicle fire and which has led Plaintiff and Class Members to experience reduced driving range.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby requests that this Court enter an Order against Defendant providing the following:

A. Certification of the proposed Class, appointment of Plaintiff as Class representative and counsel of record as Class Counsel;

B. Injunctive relief temporarily and permanently enjoining Defendant from continuing to engage in the unlawful conduct alleged herein;

C. Payment to Plaintiff and Class Members of all out-of-pocket expenses resulting from or arising from the Battery Defect alleged herein;

D. An award of all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class Members are entitled (including, without limitation, any payments made to Chevrolet dealers to address the Battery Defect);

E. An award of pre- and post-judgment interest on any amounts awarded;

F. Any additional appropriate equitable, injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Class Vehicles and to extend applicable warranties to a reasonable period of time, and to provide Plaintiff and Class Members with

appropriate curative notice regarding the existence and cause of the Battery

Defect;

G.  An award of reasonable attorneys' fees, expenses, and costs of suit; and

H.  All such other or further relief as the Court may find to be appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  March 5, 2021


                     *_/s/ Cory S. Fein_____*
                     Cory S. Fein (Texas Bar No. 06879450)
                     **CORY FEIN LAW FIRM**
                     712 Main Street, Suite 800
                     Houston, TX 77002
                     (281) 254-7717
                     (530) 748 - 0601 (fax)
                     cory@coryfeinlaw.com


                     *Attorney for Plaintiff and the*
                     *Proposed Class*